# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7272 | **DATE** | 1/31/2003 |
| **CASE TITLE** | Illusions Too Reality, LLC vs. City of Harvey | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Plaintiff's Motion for a Temporary Restraining Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth in the Attached Memorandum Opinion and Order, Illusions Too Reality's motion for a temporary restraining order is granted [17-1]. The City of Harvey is hereby enjoined from enforcing the provisions of the Sexually Oriented Business Ordinance against Illusions Too Reality, LLC. during the pendency of this suit.

(11) ■ [For further detail see order attached to the original minute order.]

| X | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | FEB - 4 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 22 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| klb (lc) | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials | |

| | |
|---|---|
| ILLUSIONS TOO REALITY, LLC, an Illinois Limited Liability Company, )<br>)<br>) | |
| Plaintiff, )<br>) | |
| ) | No. 02 C 7272 |
| v. )<br>) | |
| ) | HONORABLE DAVID H. COAR |
| CITY OF HARVEY, an Illinois Municipal Corporation, )<br>)<br>) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Before this court is an action for a temporary restraining order ("TRO") against the enforcement of a City of Harvey ordinance which prevents plaintiff from operating an adult business without a sexually oriented business license. For the reasons set forth below, plaintiff's motion for a TRO is granted.

I.  **Factual Background**

Illusions Too Reality, LLC ("Illusions"), is a limited liability company duly authorized and existing under the laws of the state of Illinois. Illusions is experienced in the operation and management of adult entertainment. The City of Harvey ("City") is a municipal corporation located in Cook County, Illinois.

On or about October 2000 Illusions' manager, John Galioto "(Galioto") met with the City's Mayor, Nicholas Graves ("Graves") to discuss the possibility of Illusions opening a "gentlemen's club" within the City. The proposed gentlemen's club would feature non-obscene

nude and semi-nude performance dance entertainment. Galioto and Graves met several times over the ensuing moths to discuss the proposed gentlemen's club. Graves assured Galioto that no special adult use license or permit was required by the City to operate the proposed business.

Galioto entered into a management agreement with Harvey Hospitality, LLC, owner of the Park Inn Hotel located at 17040 South Halsted Street, Harvey, Illinois. Under the agreement, Illusions would jointly operate and manage a gentlemen's club featuring non-obscene nude and semi-nude performance dance entertainment in a banquet room located in the hotel. On or about April 1, 2002, Harvey Hospitality applied for building permits to renovate the proposed location of the gentlemen's club. Submitted with the building permit application was a schematic of the proposed layout of the gentlemen's club. The schematic included a cat walk for the dancers and a disc jockey booth. The building permits were issued on or about April 15, 2002. On April 30, 2002, Corporation Counsel for the City sent a letter to Harvey Hospitality informing them that "[i]f it is your intent to operate an adult business within your premises, you need to comply with the enclosed Ordinance and complete the Application and file it with the City of Harvey Planning Department." Enclosed with the letter was a copy of the City's Ordinance No. 3022 that regulates adult businesses and a licensing application.

Illusions expended approximately $500,000 in renovating the premises. Illusions completed its renovation on or about June 1, 2002. On June 13, 2002, the City's Building Inspection, Rich Gini, inspected the renovation and subsequently provided Galioto with a punch list containing five items necessary for the issuance of an occupancy permit. The premises had an existing occupancy permit before the renovation commenced. Illusions completed the punch list items in a few days and requested that Gini return for reinspection. Gini failed to appear at

four scheduled appointments in late June through mid-August 2002. On September 17, 2002, an agent of Illusions met with Graves regarding the status of his occupancy permit and the operations of the proposed gentlemen's club. Graves stated that he had no objection to the proposed use of the premises and that the agent should speak with the City Attorney about opening the business and obtaining any necessary permits for an adult use. On September 20, 2002, Gini inspected the premises and granted an "oral" occupancy permit to Illusions.

On October 4, 2002, Illusions, doing business as "Flamingo," opened for business at approximately 8:00 p.m. At approximately 11:30 p.m., various member of the City's police department raided the premises and arrested several nude and semi-nude dance performers. The City's Police Department ordered that the premises be closed because the operation of the gentlemen's club on the premises was not properly licensed.

At the time of the closure of Illusions' business operations, sexually oriented businesses were governed by Ordinance No. 3022, adopted by the City on May 11, 1999. City Officials informed Illusions that the adult use proposed by Illusions came with Ordinance No. 3022's definition of a "sexually oriented business" and that a sexually oriented business permit was required prior to opening for business. Section 9(A) of Ordinance No. 3022 provided as follows:

> Section 9. Permit Required
> A.     No sexually oriented business shall be permitted to operate without a valid sexually oriented business permit issued by the City for the particular type of business. It shall be unlawful and a person commits a violation of the Ordinance if he/she operates or causes to be operated a sexually oriented business without said permit.

A party receiving a sexually oriented business license from the City must renew it on a yearly basis.

On October 21, 2002, Illusions request for a sexually oriented business permit was denied. The letter from the Director of Building and Planning, Brenda Thompson, informed Illusions that its request was denied because Illusions had falsely answered several questions in the application and failed to provide required information. In addition, the permit was denied because Illusions' business was located within five hundred feet of another adult entertainment facility, Club O, and property used as a residence in violation of Section 3(A) of Ordinance 3022.

On December 2, 2002, the City enacted Ordinance No. 3105 ("Ordinance"). The provisions of the Ordinance essentially mirrored those of Ordinance No. 3022 but some of the permit application provisions had been deleted. Like its predecessor, Section 3(A) of the Ordinance makes it unlawful for a sexually oriented business to be located within 500 feet of another such business or within 500 feet of any religious institution, school, boys' club, girls' club, or similar existing youth organization, or public park or public building, or within 500 feet of any property zoned for residential use. In addition, Section 9(A) of the Ordinance makes it unlawful to operate a sexually oriented business without a valid sexually oriented business permit issued by the City.

Section 2 of the Ordinance defines sexually oriented businesses. Sections 2(A)(3), 2(D) and 2(Q) state in relevant part:

> "Adult cabaret" means a nightclub, bar, restaurant, or similar commercial establishment, whether or not alcoholic beverages are served, which regularly feature; (a) persons who appear nude or in a state of semi-nudity

"Nudity or State of Nudity" means: (a) the appearance of human bare buttocks, anus, male genitals, female genitals, or the areola or nipple of the female breast; or (b) a state of dress which fails to opaquely and fully cover a human buttocks, anus, male or female genitals, pubic region or areola or nipple of the female breast.

"Semi-Nude" or "Semi-Nudity" means a state of dress in which clothing covers no more than the genitals, pubic region, and areolae of the female breast, as well as portions of the body covered by supporting straps or devices.

Section 23 of the Ordinance entitled "Nudity at Sexually Oriented Businesses" states:

> The United States Supreme Court decision in Barnes v. Glen Theater, Inc., 501 U.S. 560, 111 S.Ct. 2456, (June 21, 1991) which upheld the rights of cities to prohibit live public exposure of a persons' (s) (sic) private parts, specifically applies to sexually oriented businesses (regardless of whether or not a permit has been issued to said businesses under this Ordinance), including said businesses where no alcoholic beverages are sold, served, or consumed at the premises.
>
> Live nudity is prohibited in the City of Harvey within any sexually oriented business. Any sexually oriented business which is found in violation of this section shall have its permit suspended pursuant to the provisions of Section 15.

Section 29 of the Ordinance prohibits employees of adult cabarets or theaters, while dancing or performing in a state of semi-nudity, from touching a customer or the clothing of a customer. It also prohibits an employee to dance or perform in a state of nudity. It further prohibits customers from touching an employee appearing in a state of nudity or semi-nudity. Section 30 of the Ordinance prohibits patrons from directly paying for any service or dance, or give any tips to any dancer or performer. Under Section 30, any tips for dancers or performers of a sexually oriented business must be placed in a "designated box withing the facility not located on the dancing or performing stage or in violation of the distance requirements stated in Section 31 of this Ordinance. Section 31 requires dancing and performances to take place on a fixed or immovable

stage which is elevated at least two feet from the floor and audience members must be at least five feet away from the edge of the stage. Lap dances are prohibited.

Section 11 of the Ordinance governs Issuance of a permit. Section 11(A) states that the Director of Building & Planning shall grant or deny an application for a permit withing thirty dates of its filing. After the thirtieth day, the applicant is allowed to begin operating the business unless and until the City notifies the applicant of a denial and states the reasons therefore. Section 11(C) lists eight circumstances under which the Director of Building & Planning shall deny the application. The application will be denied if (a) the applicant is under eighteen years old; (b) the applicant resides with a person who was denied a permit in the preceding twelve months or whose permit was revoked in the preceding twelve moths; (c) the applicant fails to provide required information or falsely answered a question on the application form; (d) the premises for the business are not in compliance with health, fire and building codes; (e) the application fees are unpaid; (f) the applicant is in violation of, or not in compliance with, any ordinance of the City and any provisions of the sexually oriented business ordinance including the zoning locational requirements; (g) the granting of the application would violate a statute, ordinance, or court order; and (h) the applicant has a permit under the sexually oriented business ordinance which has been suspended or revoked. Section 11(C)(2) specifies that the applicant shall be notified of the denial and the reason(s) for the denial within 14 days of the denial.

Section 17 of the Ordinance entitled "Judicial Review of Permit Denial, Suspension or Revocation" states:

> After denial of an application, or denial of a renewal of an application or suspension or revocation of a permit, the applicant or permitee may seek within fourteen (14) days from the date of the denial, suspension or revocation review of

such administrative action through the City council or special City Council Review Board if one is established by the City. Within seven (7) days of the filing of such an appeal the Council or Review Board shall schedule a hearing date on such appeal. Said hearing shall be commenced within thirty (30) days of the date said appeal was filed. The rules of evidence applicable in a court of law in the State of Illinois shall be relaxed at this hearing.

Once said hearing is concluded, the Councilor Review Board shall make a ruling and mail to each participant a written decision within fourteen (14) days of the date of the conclusion of the hearing.

If the denial, suspension or revocation is affirmed upon review, the administrative action may be reviewed by a Court if said petition for review is filed in the Circuit Court of Cook County or any other court of competent jurisdiction within thirty (30) days of the date said ruling was mailed to any party. An applicant is free to utilize all rights afforded to it for the review of administrative agency rulings by way of application for a writ of certiorari to the applicable court of competent jurisdiction.

## B. TRO Standard

A temporary restraining order ("TRO") is an emergency remedy issued to maintain the status quo until a hearing can be held on an application for a preliminary injunction. Coca-Cola Co. v. Alma-Leo U.S.A., Inc., 719 F.Supp. 725, 726 (N.D.Ill.1989). The purpose of a TRO, similar to that of a preliminary injunction, is to minimize the hardship to the parties pending the ultimate resolution of the suit. Faheem-El v. Klincar, 841 F.2d 712, 717 (7th Cir.1988). In this circuit, the standards for a TRO and a preliminary injunction are functionally identical. Bernina of America, Inc. v. Fashion Fabrics International, 2001 WL 128164, at * 1 (N.D.Ill. Feb.9, 2001).

Injunctive relief, including the entry of a TRO, is warranted if the movant can make a threshold showing: (1) that the movant has some likelihood of success on the merits of the underlying litigation; (2) irreparable harm to the plaintiff; and (3) no adequate remedy at law exists. If these three conditions are met, then the Court must balance the harm to the movant if the injunction is not issued against the harm to the defendant if it is issued improvidently and

consider the interest of the public in whether the injunction is to be granted or denied. See Duct-O-Wire Co. v. U.S. Crane, Inc., 31 F.3d 506, 509 (7th Cir.1994); Storck USA, L.P. v. Farley Candy Co., 14 F.3d 311, 314-15 (7th Cir.1994); Abbott Laboratories v. Mead Johnson & Co., 971 F.2d 6, 11-12 (7th Cir.1992).

C. **Discussion**

The First Amendment to the United States Constitution states that "Congress shall make no law....abridging the freedom of speech." USCA Amend. 1. That protection is incorporated by the Fourteenth Amendment and is thus applicable to the states. In Barnes v. Glen Theatre, Inc., 501 U.S. 560, 565-66, 581, 587-88, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991), the Supreme Court recognized that totally nude, non-obscene dancing is expressive conduct that is entitled to at least minimal protection under the First Amendment.

Illusions is seeking a TRO against the enforcement of the Ordinance because it is unconstitutional on its face and violates Illusions' rights guaranteed by the First Amendment of the United States Constitution. Specifically, Illusions argues that licensing scheme is a prior restraint[1] that fails to provide adequate procedural safeguards in the form of prompt judicial review in conjunction with the denial, suspension or revocation of a sexually oriented business permit as required by Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965).

---

[1] A prior restraint occurs where communication is suppressed, either directly or by inducing excessive caution in the communicator, without a prior judicial determination that the speech is unprotected by the First Amendment. See Alexander v. United States, 509 U.S. 544, 551-52, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993); Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations, 413 U.S. 376, 390, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973). Prior restraints are not unconstitutional per se but they bear a heavy presumption against their constitutional validity." Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546, 558, 95 S.Ct. 1239,1246, 43 L.Ed.2d 448 (1975).

Additionally, Illusions claims that the Ordinance does not provide for the necessary procedural guarantee of mandatory judicial review in conjunction with the denial, suspension or revocation of a sexually oriented business permit. The Court will first determine whether Illusions has a likelihood of success on the merits.

In Freedman v. Maryland, the Supreme Court struck down a Maryland motion picture censorship statute on the ground that the statute was an unconstitutional prior restraint. 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). Pursuant to the censorship statute, a person seeking to exhibit a motion picture had to submit the picture to a board of examiners before the picture was exhibited. Only those films that were "moral and proper" were approved, while films that tended to "debase or corrupt morals or incite to crimes" were disapproved. Id. at 52 n.2. The Supreme Court held that a process which requires prior submission of a film to a censor is only constitutional if it takes place under the procedural safeguards "designed to obviate the dangers of a censorship system. The Court then set out certain "safeguards," later summarized by Justice Brennan as follows:

> (1) any prior restraint in advance of a final judicial determination on the merits must be no longer than that necessary to preserve the status quo pending judicial resolution; (2) a prompt judicial determination must be available; and (3) the would-be censor must bear both the burden of going to court and the burden of proof in court.

FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 239, 110 S.Ct. 596, 611, 107 L.Ed.2d 603 (1990).

In FW/PBS, the Supreme Court struck down as an unconstitutional prior restraint a Dallas ordinance that regulated "sexually oriented business" through a scheme incorporating zoning, licensing, and inspections. Justice O'Connor, writing for the plurality, stated that the Supreme Court cases addressing prior restraints have identified two "evils" that cannot be tolerated:

(1) prior restraint that places unbridled discretion in the hands of government officials; and (2) a prior restraint that fails to place limits on the time within which the decision maker must issue a license. See FW/PBS, 493 U.S. at 226 (plurality). The plurality held that the Dallas ordinance was an unconstitutional prior restraint because the ordinance "[did] not provide for an effective limitation on the time within which the licensor's decision must be made." Id. at 229.

Although the Dallas ordinance was held unconstitutional by the Supreme Court, FW/PBS makes it clear that the third Freedman protection is unnecessary when the ordinance or statute does not require an official to exercise discretion by passing judgment on the content of protected speech. The FW/PBS plurality explained:

> The core policy underlying Freedman is that the license for a First Amendment-protected business must be issued within a reasonable period of time, because the undue delay results in the unconstitutional suppression of protected speech. Thus, the first two safeguards are essential: the licensor must make the decision whether to issue the license within a specified and reasonable time period during which the status quo is maintained, and there must be the possibility of prompt judicial review in the event that the license is erroneously denied.

Id. at 228. However, the plurality held that the third Freedman requirement – that the censor bear the burden of going to court if the speech is to be suppressed and of justifying the decision once in court – does not apply when the decision maker "does not exercise discretion by passing judgment on the content of any protected speech." Id. at 229. Also, "[b]ecause the license [was] the key to the applicant's obtaining and maintaining a business, there [was] every incentive for the applicant to pursue a license through the court." Id. at 229-30.

In this case, the first Freedman requirement is satisfied because the Ordinance clearly lays out time limits within which the decision to grant or deny a permit must be made. At issue is the second Freedman requirement of "prompt judicial review." Illusions argues that "prompt judicial

review" requires the City to provide a prompt decision from the courts as to whether a permit should have been granted or denied. According to the City, however, "prompt judicial review" means only that there must be access to prompt judicial review, and there need not be a judicial determination within a short period of time.

The circuits are divided over this question. In Graff v. City of Chicago, the Seventh Circuit, sitting en banc, analyzed a Chicago ordinance governing the licensing of sidewalk newsstands. 9 F.3d 1309 (7th Cir. 1993) (en banc). Under the ordinance at issue in Graff, the Chicago commissioner of transportation considered six exclusive criteria by which to grant or deny permission to build a newsstand, which did not vest a large amount of discretion in the commissioner or require him to evaluate the content of the materials to be sold on the newsstands. The ordinance lacked a self-contained provision for prompt judicial review. See id. at 1325. Nevertheless, the plurality found the statute constitutional because the appropriate method in Illinois for reviewing the commissioner of transportation's administrative decision is by the common law writ of certiorari. See id. at 1325.

Some other circuits have similarly held that "prompt judicial review," at least with regard to licensing decisions, requires only that the government provide prompt access to the courts. See, e.g., Boss Capital, Inc. v. City of Casselberry, 187 F.3d 1251, 1256-57 (11th Cir. 1999) (concluding that "access to prompt judicial review is sufficient for licensing decisions"); TK's Video v. Denton County, 24 F.3d 705, 709 (5th Cir. 1994) (same); Jews for Jesus v. Mass. Bay Trans. Auth., 984 F.2d 1319, 1327 (1st Cir. 1993) (implying that access is sufficient). Others have concluded that "prompt judicial review" requires a prompt judicial resolution of license denials. See Nightclubs, Inc. v. City of Paducah, 202 F.3d 884, 892-93 (6th Cir. 2000); Baby

Tam & Co. v. City of Las Vegas, 154 F.3d 1097, 1101-02 (9th Cir. 1998); 11126 Baltimore Boulevard, Inc. v. Prince George's County, 58 F.3d 988, 1000-01 (4th Cir. 1995).

In MacDonald v. City of Chicago, the Seventh Circuit analyzed the constitutionality of an ordinance governing the city's grant of parade permits. 243 F.3d 1021 (7th Cir. 2001). In addressing the issue of prompt judicial review, the Seventh Circuit noted the split currently in the Federal Circuits. It then went on to state:

> While the circuits are split on this issue, this court has recently made clear in Thomas that in this circuit a common law certiorari proceeding "is good enough for a regulation of expressive activity when the regulation is not a form of censorship, that is, does not require or permit the regulatory authority to evaluate the content or message of the activity regulated." Thomas, 227 F.3d at 926 (citing fractured opinion in Graff and "counting noses" to reach this conclusion). Because this case--like Thomas--involves a permit regulation that is not a form of censorship and that does not evaluate the content or the message of the activity, judicial review through Illinois' common law certiorari proceedings satisfies constitutional scrutiny.

MacDonald, 243 F.3d at 1035.

The Seventh Circuit, however, has not had occasion to review the issue in the context of a licensing scheme that regulates adult businesses, such as the Ordinance at issue in this case. In Z.J. Gifts D-4 v. City of Littleton, the Tenth Circuit drew a distinction between adult business licensing ordinances and other content-neutral time, place, and manner restrictions for purposes of determining what constitutes "prompt judicial review." 311 F.3d 1220, 1238 (10th Cir. 2002). The Court explained that even though a licensing official may have little or no discretion in reviewing an application, he or she may be tempted nonetheless to overstep the bounds of the ordinance due to the official's personal views on the morality of sexually explicit entertainment. Id. The Court went on to state that the danger that an adult business licensing ordinance "may be

improperly used as subterfuge for censorship is too great to overlook the necessity for a prompt judicial determination." Id.

The case at bar involves an adult business licensing scheme which regulates the amount of nudity that is permitted as well as the type of dancing that is permitted in an adult cabaret. The Seventh Circuit, in MacDonald, stated that the common law writ of certiorari suffices for prompt judicial review when the regulation "does not require or permit the regulatory authority to evaluate the content or message of the activity regulated." 248 F.3d at 1035. In this case, the decision to grant or deny an adult entertainment permit (whether initially or upon renewal) does involve an evaluation of the content of the activity. Under the Ordinance, sexually oriented businesses are subject to inspection. Nude and semi-nude are defined in the Ordinance. Since nudity is prohibited, a licensor would have to judge, inter alia, whether female or male genitals were "opaquely" covered to determine if the applicant was in compliance with the ordinance. Since the expressive activity at issue is semi-nude non-obscene dancing, it would be nearly impossible for a license to be renewed without evaluating the content of the message.

This Court agrees with the Tenth Circuit that a prompt final decision is required in these types of cases to comply with the second requirement of Freedman. See Z.J. Gifts D-4, 311 F.3d at 1238 (finding busy state court judges may not be able to conduct a hearing and render a decision in a prompt manner and that a theoretical possibility of expeditious judicial review is constitutionally insufficient). The Ordinance at issue in this case does not provide for a prompt judicial determination. To the contrary, it merely provides a time frame in which a cause of action is to be filed. Thus, the plaintiffs have demonstrated a likelihood of success on the merits of their facial attack of the Ordinance.

As the plaintiff has demonstrated a likelihood of success on the merits, this Court must go on to address the remaining factors in the granting of a TRO. The next factor in a TRO inquiry is irreparable harm to the plaintiff. The loss of a First Amendment right, even for a minimal period of time, is deemed an irreparable injury warranting injunctive relief. To the extent, then, that Illusions' First Amendment rights would be compromised by the enforcement of the Ordinance's permit provisions, an award of money damages would not fully compensate Illusions for that injury. Thus, there is no adequate remedy at law for the compensation of plaintiff's injury. Finally, this Court must balance the interests. Illusions has a substantial interest in asserting its First Amendment rights. In addition, Illusions has invested over $500,000 in its business in the City. The City's interest is in regulating the public's health, safety and welfare and ensuring compliance with its laws. There are other sexually oriented business in the City and some of them have not obtained sexually oriented business licenses and have not been shut down. The City's lack of uniform enforcement serves to somewhat lessen their interest in Illusions' compliance with the ordinance. Thus, the balance of interests weights in favor of Illusions. Further, the public interest is served by preventing the violation of a party's constitutional rights. Accordingly, Illusions has demonstrated that the grant of a TRO is warranted in this case.[2]

---

[2] As this Court has determined that a TRO is proper based on plaintiff's First Amendment claim, this Court need not examine plaintiff's other claims.

## Conclusion

For the foregoing reasons, Illusions Too Reality's motion for a temporary restraining order is granted. The City of Harvey is hereby enjoined from enforcing the provisions of the Sexually Oriented Business Ordinance against Illusions Too Reality, LLC. during the pendency of this suit.

Enter:

_____
David H. Coar
United States District Judge

Dated: January 31, 2003